UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LOUIS G. RASETTA and JOHN J. SHAUGHNESSY, as they are TRUSTEES, INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 4 HEALTH AND WELFARE, PENSION AND ANNUITY FUNDS, and LOUIS G. RASETTA and CHRISTOPHER BARLETTA, as they are TRUSTEES, HOISTING AND PORTABLE ENGINEERS LOCAL 4 APPRENTICE AND TRAINING FUNDS and INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 4, Plaintiffs<br><br>vs.<br><br>RSG CONTRACTING CORPORATION, Defendant<br><br>and<br><br>EASTERN CONTRACTORS, INC., Reach-and-Apply Defendant<br><br>and<br><br>ENTERPRISE BANK AND TRUST COMPANY, Trustee | C.A. No. |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

I. **INTRODUCTION**

This is an action brought to collect contributions due employee benefit funds under the terms of a collective bargaining agreement. Plaintiffs (hereinafter "the Funds") are employee benefit plans. Defendant RSG Contracting Corporation (hereinafter "RSG") is a Massachusetts corporation. Reach-and-apply defendant Eastern Contractors, Inc. (hereinafter "Eastern") is a

Massachusetts corporation for whom RSG worked as a subcontractor on projects for which contributions are due and which are the subject of this claim. The Funds have a legal or equitable interest in any payments due RSG from Eastern for work conducted on these or any other projects. The action has been brought pursuant to §§502(a)(3) and 515 of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1132(a)(3) and 1145 (hereinafter "ERISA").

The Court has exclusive jurisdiction of this action pursuant to §§502(a)(3) and (f) of ERISA, 29 U.S.C. §§1132(a)(3) and (f), without respect to the amount in controversy or the citizenship of the parties.

At this juncture, plaintiffs are before the Court on a Motion for Preliminary Injunction. Plaintiffs seek an order enjoining reach-and-apply defendant Eastern and its agents, servants, employees, attorneys, and upon those persons in active participation or concert with it and those persons acting at its command who receive actual notices of a Preliminary Injunction order by personal service or otherwise, and each and every one of them, from secreting, concealing, destroying, damaging, selling, transferring, pledging, encumbering, assigning, or in any way or manner disposing of or reducing the value of, or making any payment to defendant RSG on account of sums that are due or will hereafter become due RSG from Eastern.

**II.     STATEMENT OF FACTS**

On or about June 1, 2001, defendant RSG agreed in writing to be bound to the terms of the Restated Agreements and Declarations of Trust establishing Plaintiff Funds, to the terms of collective bargaining agreements requiring contributions to Plaintiff Funds; and to any successor agreements. See Affidavit of James Bucci ("Bucci Aff."), par. 2. A copy of RSG's signed agreement ("short form agreement") is attached to the Complaint as Exhibit A. Because of the

2

short form agreement, RSG has been a party to successive collective bargaining agreements with the International Union of Operating Engineers Local 4, including the agreement which is effective from June, 1999 through May, 2005 ("the Agreement"). Bucci Aff., par. 3. A copy of the relevant portions of this Agreement is attached to the Complaint as Exhibit B. The Agreement requires RSG to make contributions to Plaintiff Funds for each payroll hour for each person covered by the Agreement. Bucci Aff., par. 4. Pursuant to the Agreement, employers are also obligated to deduct and remit a negotiated percentage of the gross wage package, before taxes, for union dues. Bucci Aff., par. 5.

RSG has failed to pay monthly contributions to the Funds since paying contributions owed for work done during the month of April, 2004. Bucci Aff., par. 6. According to remittance reports prepared by RSG and submitted to the Funds, RSG owes $22,242.01 in contributions for the period May, 2004 through February, 2005, with an as yet unliquidated amount due thereafter. Bucci Aff., par. 7. Under the terms of the Agreement, RSG owes $1,687.56 in interest on those unpaid contributions. Bucci Aff., par. 8. Further, RSG owes the Union $828.56 in dues deducted from employees' paychecks. Bucci Aff., par. 9. RSG also owes the Funds $69.90 in contributions to the Social Action Committee, for which contributions are paid for each payroll hour for each person covered by the Agreement. Bucci Aff., par. 10. By certified letter dated December 8, 2004, the Funds' attorney demanded payment of the delinquent contributions and interest from May, 2004 forward. Bucci Aff., par. 11. A copy of that letter is attached to the Complaint as Exhibit C. While RSG did subsequently remit a check for $12,350.99 in payment of contributions owed for April, 2004, this check was merely a replacement for a check that had been provided to the Funds on September 6, 2004 in payment of April, 2004 contributions and which had been returned due to insufficient funds. Bucci Aff., par.

12. The company has failed to pay contributions owed from May, 2004 forward, as demanded in the Exhibit C letter. Id. Thus, to date, RSG has failed to pay the Funds $23,999.43, representing contributions and interest owed from May, 2004 through February, 2005, plus an as yet unliquidated amount due thereafter, and has failed to pay the Union $828.56, representing dues owed for the same period of time. Bucci Aff., par. 13.

RSG worked as a subcontractor to Eastern on a project at Lincoln-Sudbury High School in Sudbury, Massachusetts during the months of August and September, 2004, representing a part of the period of time for which contributions are owed by RSG. Bucci Aff., par. 14. The Funds received certified payroll records demonstrating that a total of $2,634.06 is due from RSG to the Funds for work done by Funds' members on Eastern's Lincoln-Sudbury High School job. Bucci Aff., par. 15. Further, upon information and belief, Eastern has not paid RSG for the work RSG did on the Lincoln-Sudbury High School job and, as a result, RSG pulled off the job in September, 2004. Bucci Aff., par. 16.

### III. ARGUMENT

Injunctive relief is specifically authorized by §502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3). Laborers' Fringe Benefit Funds, Detroit and Vicinity v. Northwest Concrete & Construction, Inc., 640 F.2d 1350, 1352 (6th Cir. 1981) ("Northwest Concrete"). A motion for preliminary injunction is addressed to the sound discretion of the court. LeBeau v. Spirito, 703 F.2d 639, 642 (1st Cir. 1983). The standard to be used by the district court in ruling on a motion for preliminary injunction is well established.

> In deciding whether to grant a preliminary injunction, a district court must weigh the following four factors: 1) the likelihood of the movant's success on the merits; 2) the potential for irreparable harm to the movant; 3) a balancing of the relevant equities, i.e. "the hardship to the nonmovant if the restrainer issues as contrasted

4

with the hardship to the movant if interim relief is withheld",
Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir.
1991); and 4) the effect on the public interest of a grant or denial of
the injunction.

Gately v. Comm. of Mass., 2 F.3d 1221, 1224 (1st Cir. 1993), cert. denied, 114 S.Ct. 1832 (1994) ("Gately"); Caroline T. v. Hudson School Dist., 915 F.2d 752, 754-755 (1st Cir. 1990); Agency Rent-A-Car, Inc. v. Connolly, 686 F.2d 1029, 1034 (1st Cir. 1982). Examination of each of these factors establishes that plaintiffs are entitled to the relief requested.

### 1) **Likelihood of Success**

"[T]he sine qua non of [the preliminary injunction standard] is whether the plaintiffs are likely to succeed on the merits." Gately, supra, 2 F.3d at 1225, citing Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993). The exhibits and affidavits on file establish that plaintiffs will prevail on the merits.

Massachusetts General Laws chapter 214, §3(6) is the Commonwealth's reach-and-apply statute. Under this statute, the Court must engage in a two-step process to establish (1) the indebtedness of the defendant and (2) that the defendant has property that can be reached by the plaintiffs in satisfaction of the defendant's debt. Hunter v. Youthstream Media Networks, Inc., 241 F.Supp.2d 52, 57 (D.Mass. 2002). This two-step process is further explained as follows:

> The first step is in the nature of an action at law and requires the plaintiff to establish the debt owed by the principal defendant to the plaintiff. Massachusetts Electric Company v. Athol One, Inc., 391 Mass. 685 (Mass. 1984) ("in the first step," the plaintiff must show the existence of a debt owed to the plaintiff by "the principal defendant") . . . "The second step involves the process of satisfying the debt," . . . "out of the property held by one who owes a debt to the principal defendant." Massachusetts Electric Company v. Athol One, Inc., 391 Mass. at 687 . . . Under chapter 214, the plaintiff "must show that the property, by its nature, is incapable of attachment or of taking on execution in a legal

action." Massachusetts Electric Company v. Athol One, Inc., 391 Mass. at 687 . . .

Trustees v. Baldwin Steel Co., Inc., 2001 WL 1555539, *3-*5 (D.Mass. 2001).

In the instant case, RSG has failed to pay the Funds $23,999.43, representing contributions and interest owed from May, 2004 through February, 2005, plus an as yet unliquidated amount due thereafter, and has failed to pay the Union $828.56, representing dues owed for the same period of time. Bucci Aff., par. 13. As stated above, RSG is signatory to a collective bargaining agreement with the Union that requires RSG to make contributions to the Funds for each payroll hour for each person covered by the Agreement. Bucci Aff., pars. 3, 4. According to remittance reports prepared by RSG and submitted to the Funds, RSG owes $22,242.01 in contributions for the period May, 2004 through February, 2005, with an as yet unliquidated amount due thereafter. Bucci Aff., par. 7. RSG owes $1,687.56 in interest on those unpaid contributions. Bucci Aff., par. 8. Further, RSG owes the Union $828.56 in dues deducted from employees' paychecks. Bucci Aff., par. 9. RSG also owes the Funds $69.90 in contributions to the Social Action Committee, for which contributions are paid for each payroll hour for each person covered by the Agreement. Bucci Aff., par. 10. Thus, the existence of a debt owed to the plaintiff by the principal defendant has been clearly established.

Further, the Funds wish to satisfy the defendant's debt, in part, out of payments owed RSG by Eastern. RSG worked as a subcontractor to Eastern on a project at Lincoln-Sudbury High School in Sudbury, Massachusetts during the months of August and September, 2004, representing a part of the period of time for which contributions are owed by RSG. Bucci Aff., par. 14. The Funds received certified payroll records demonstrating that a total of $2,634.06 is due from RSG to the Funds for work done by Funds' members on Eastern's Lincoln-Sudbury

6

High School job. Bucci Aff., par. 15. Further, upon information and belief, Eastern has not paid RSG for the work RSG did on the Lincoln-Sudbury High School job and, as a result, RSG pulled off the job in September, 2004. Bucci Aff., par. 16. RSG may have also worked as a subcontractor to Eastern on other previous or subsequent projects, in which case the Funds have a legal or equitable interest in any payments due RSG from Eastern for those projects, as well. Payments held by Eastern cannot be attached or taken on execution except pursuant to G.L. c. 214, §3(6).

### 2) Irreparable Harm

If reach-and-apply defendant Eastern was to secret, conceal, destroy, damage, sell, transfer, pledge, encumber, assign, or in any way or manner dispose of or reduce the value of, or make any payment to defendant RSG on account of sums that are due or will hereafter become due RSG from Eastern, it would render the Funds unable to fully satisfy their fiduciary and statutory obligations to the Funds' beneficiaries and participants. "ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled . . ." Central States Pension Fund, 472 U.S. at 571. The Funds are entitled to contributions for all work performed by RSG's employees. Bucci Aff., par. 4.

### 3) Balancing of Harms

"The heart of the matter is whether 'the harm caused plaintiff without the injunction, in light of the plaintiff's likelihood of eventual success on the merits, outweighs the harm the injunction will cause defendants.'" Gately, supra, 2 F.3d at 1225, quoting Vargas-Figueroa v. Saldana, 826 F.2d 160, 162 (lst Cir. 1987) (emphasis in original).

No harm can come to the reach-and-apply defendant by being enjoined from disbursing payments that it already owes the defendant for work done by the defendant on its projects. The demonstrated harm to plaintiffs far outweighs any harm to the reach-and-apply defendants.

### 4) **Public Interest**

Congress declared it to be the policy of ERISA to "protect . . . the interest of participants in employee benefit plans and their beneficiaries . . . by providing for appropriate remedies, sanctions, and ready access to Federal courts." 29 U.S.C. §1001(b). The House Report on the Act's enforcement provisions states that they are

> designed specifically to provide both the Secretary and participants
> and beneficiaries with broad remedies for redressing or preventing
> violations of the Act. The intent of the committee is to provide the
> full range of legal and equitable remedies available in both state
> and federal courts and to remove jurisdictional and procedural
> obstacles which in the past appear to have hampered effective
> enforcement of fiduciary responsibilities . . .

H.R. Rep. No. 93-533, 93d Cong., 2d Sess. 17, reprinted in [1974] U.S. Code Cong. & Ad. News, p. 4639, 4655.

The federal courts have interpreted this legislative history as "unambiguous evidence" that Section 502's enforcement provisions are intended to "have teeth" and to be "liberally construed." Northwest Concrete, supra, at 1352. "Given the array of remedies that ERISA provides for redressing and preventing violations of the statute, it is not surprising that federal courts have frequently resorted to injunctive relief when it has been perceived as necessary to fully protect the statutory and contractual rights of Fund participants and beneficiaries." Metropolitan D.C. Paving Industry Employees Health and Welfare Trust Fund v. Jones & Artis Construction Co., 2 EBC 2227, 2223 (D. D.C., 1991).

"Congress made it abundantly clear that an employer would not be permitted to circumvent or ignore its funds, payment and other obligations under ERISA." A & G, citing Northwest Concrete, supra, at 1352. The public interest in preserving the integrity of employee pension, health, and welfare plans would be furthered by issuance of the preliminary injunction.

## IV.  CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully submit that their Motion for Preliminary Injunction should be granted.

Respectfully submitted,

LOUIS G. RASETTA and JOHN J.
SHAUGHNESSY, as they are TRUSTEES,
INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 4
HEALTH AND WELFARE FUND, et al,

By their attorneys,

_____
Anne R. Sills, Esquire
BBO #546576
Gregory A. Geiman, Esquire
BBO #655207
Segal, Roitman & Coleman
11 Beacon Street, Suite #500
Boston, MA  02108
(617) 742-0208

Dated: April __, 2005

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction has been served by certified and first class mail upon the defendant, RSG Contracting Corporation at 96 Stedman Street, Lowell, MA 01851 and by first class mail upon the reach-and-apply defendant, Eastern Contractors, Inc. by its attorney David Keenan at Quinlan & Sadowski, 11 Vanderbilt Avenue, Norwood, MA  02062 this __ day of April, 2005.

_____
Gregory A. Geiman, Esquire

GAG/gag&ts
ARS 3118 04-511/memsupmotpj.doc